UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JGR, by his parent and next friend,
MADELINE REYES,

                                        Plaintiff,

   v.                                                    **DECISION AND ORDER**
                                                                          04-CV-206S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

       1.       Plaintiff challenges an Administrative Law Judge's ("ALJ") determination that her minor child, JGR, is not eligible for childhood Supplemental Security Income ("SSI") benefits under the Social Security Act ("the Act"). Plaintiff alleges that JGR is disabled due to the residual effects of a skull fracture and craniotomy, and is therefore entitled to benefits under the Act.

       2.       Plaintiff filed an application for SSI benefits on behalf of JGR on April 6, 2001. (R. at 96-98). After the claim was denied, Plaintiff requested a hearing, at which she and JGR appeared before Administrative Law Judge ("ALJ") William R. Pietz. The ALJ considered the case *de novo* and on May 8, 2003, found that JGR was not disabled. (R. at 18-26). The Appeals Council denied review and this action followed. (R. at 6-9). By Text Order entered on October 13, 2004, this Court ordered a Stipulation for Remand to locate and complete the administrative record and a full record was filed thereafter. (Docket No. 5).

       3.       Defendant filed a Memorandum of Law in Support of the Commissioner's Motion for Judgment on the Pleadings on January 23, 2006. Plaintiff filed a Memorandum

in Opposition to Defendant's Motion for Judgment on the Pleadings on April 6, 2007. The Defendant filed a Reply Memorandum of Law on April 26, 2006. For the following reasons, Defendant's motion is denied.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. § § 405(g), 1383(c)(3); Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000). Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one reasonable interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination

considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041-42 (2d Cir. 1984).

6. On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity and Reconciliation Act of 1996, which amended the statutory standard for children seeking SSI benefits. See 42 U.S.C. § 1382c. This legislation provides that "[a]n individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

7. The regulations promulgated by the Social Security Administration define "marked and severe functional limitations" in terms of "listing-level severity," *i.e.*, an impairment that meets, medically equals or functionally equals the severity of an impairment in the listings. 20 C.F.R. § 416.926a(a). In accordance with the regulations, a child's functional limitations are evaluated in six broad areas or domains of functioning: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. See 20 C.F.R. § 416.926a(b).

8. The Commissioner has established a three-step sequential evaluation process to determine whether a child is disabled as defined under the Act. See 20 C.F.R. § 416.924. Specifically, the child must demonstrate: (1) that he or she is not working; (2)

that he or she has a "severe" impairment or combination of impairments; and (3) that his or her impairment or combination of impairments is of listing level severity, in that it meets, medically equals, or functionally equals the severity of a listed impairment. See 20 C.F.R. § 416.924. A child's medically determinable impairment or combination of impairments "functionally equals" a listed impairment if it results in "marked" limitations in two domains or an "extreme" limitation in one domain. See 20 C.F.R. § 416.926a.

  9. Applying the sequential evaluation in the instant case, the ALJ first found that JGR, then seventeen years old, was not engaging in substantial gainful activity. (R. at 25). Next, the ALJ concluded that JGR presented several severe medically determinable impairments, first diagnosed as Traumatic Brain Injury with accompanying skull and other fractures, and later incorporating additional diagnoses for disruptive behavior disorder, borderline intellectual functioning and adjustment disorder, which combined caused more than a slight or minimal impact on JGR's functional capacity. (R. at 23-25). The ALJ then determined that JGR's impairments did not meet or medically equal in severity any of the listed impairments. (R. at 23, 25). The ALJ evaluated JGR's physical and mental impairments, and noted that the medical evidence revealed a single marked limitation in the domain of caring for oneself, and therefore concluded that his impairments did not functionally equal a listed impairment. (R. at 24, 315). Based on the record, the ALJ ultimately determined that JGR was not under a disability as defined by the Act at any time through the date of his decision, May 8, 2000. (R. at 25).

  10. Plaintiff asserts a number of challenges to the ALJ's decision, one of which is persuasive. Plaintiff contends that the ALJ failed to adequately consider JGR's IQ test scores in evaluating whether JGR suffered from a marked or severe functional limitation.

Plaintiff agrees with the ALJ's finding that JGR's impairments neither meet nor medically equal the severity of a listed impairment. (Plaintiff's Mem. at 16-17). Plaintiff takes issue, however, with the ALJ's finding that JGR does not suffer from a combination of medically determinable physical or mental impairments that result in marked and severe functional limitations. (Plaintiff's Mem. at 17). Plaintiff contends that in assessing JGR's limitations, the ALJ failed to give sufficient reasons for discrediting JGR's standardized test scores. (Plaintiff's Mem. at 19-20).

The ALJ stated that he was relying on testing from the consultive psychological evaluation on June 12, 2001, which yielded a non-verbal IQ score of 82. (R. at 23-24, 314). The ALJ did not rely on Plaintiff's other "markedly reduced IQ scores," reasoning that they "may have been influenced by a language barrier and the proximity of his brain injury." (R. at 23).

The Commissioner's Rules for determining functional equivalence for children provide that the Commissioner will consider medical evidence, in the form of standardized testing, in determining whether a claimant suffers from a "marked" or "severe" functional limitation. 20 C.F.R. § 416.926a(e). The rules explain that the Commissioner will consider a claimant's test scores "together with other information we have about your functioning," and that "[n]o single piece of information taken in isolation can establish whether you have a 'marked' or an 'extreme' limitation in a domain." 20 C.F.R. § 416.926a(e)(4). The rules further point out that the Commissioner may find that a claimant does not suffer from a "marked" or "extreme" limitation, even when standardized test scores indicate as much, if the record shows that claimant's functioning in day-to-day activities is not seriously impaired. 20 C.F.R. § 416.926a(e)(4)(ii)(B).

In the present case, this Court finds that the ALJ failed to adequately consider Plaintiff's early IQ test scores obtained during Plaintiff's rehabilitation. While these IQ tests alone are not determinative as to Plaintiff's potential disability, it was error to automatically discount them based on their proximity to Plaintiff's brain injury and a possible language barrier. The ALJ should have considered Plaintiff's early IQ test scores and assessed their value in light of other relevant circumstances, such as Plaintiff's daily activities. 20 C.F.R. § 416.926a(e)(4)(ii)(B).

11. Having reviewed the record evidence and the parties' arguments, this Court finds that this case should be remanded to the Commissioner for further proceedings. In particular, the Commissioner shall consider each of Plaintiff's IQ tests, and weigh its assessment value in light of Plaintiff's daily activities and other relevant circumstances. See 20 C.F.R. § 416.926a(e)(4)(ii)(B).

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this Decision and Order.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:   September 26, 2007
         Buffalo, New York

                                            /s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                          United States District Judge